1  **WO**

2                              NOT FOR PUBLICATION

3

4

5

6              IN THE UNITED STATES DISTRICT COURT

7              FOR THE DISTRICT OF ARIZONA

8

9  Rev. Richard Arno Lee, deceased,)   No. CV-10-0066-PHX-GMS
   represented by Wanda Lee, wife and)
10 Personal Representative,          )   **ORDER**
                                     )
11              Plaintiff,           )
                                     )
12 vs.                               )
                                     )
13                                   )
   State of Arizona, et al.,         )
14                                   )
                Defendants.          )
15                                   )
                                     )
16 _____  )

17       Two motions to dismiss are pending before the Court: one filed by the State of

18 Arizona (the "State" or "Arizona") (Doc. 34) and one filed by Defendants Maricopa County

19 (the "County"), Detective Brian Mackiewicz, #1227 ("Det. Mackiewicz"), and Sheriff Joseph

20 Arpaio ("Sheriff Arpaio") (collectively the "County Defendants") (Doc. 25).  The Court

21 grants the State's motion and denies the County Defendants' motion.

22                              **BACKGROUND**

23       The Amended Complaint alleges the following.  On April 24, 2008, Plaintiff's

24 decedent, Reverend Richard Arno Lee ("Lee") was arrested for the murder of Douglas

25 Spencer.  At the time of his arrest, Lee was seventy-four years old.  He wore dentures and

26 suffered from a number of other health issues, including diabetes.  Det. Mackiewicz, who

27 interviewed Lee for the Maricopa County Sheriff's Office ("MCSO"), received a kit

28 containing Lee's medications and false teeth.  While in custody with Det. Mackiewicz, Lee

1   mentioned that he was in pain and requested his false teeth and an examination of his blood

2   sugar levels.   After several more complaints, Det. Mackiewicz stated that he had the

3   medications and the dentures and promised to talk to the nurse about Lee's condition.  Lee,

4   however, never received his dentures or other requested medical care.  Lee was processed

5   into the general population of the Maricopa County Towers Jail and shared a cell with two

6   other inmates.  The next day, the State filed criminal charges against Lee.

7        Several days later, Lee received a visit from Ms. Lee, the Plaintiff in this action.  They

8   filled out the necessary forms to receive a breathing machine and heart pills.  Lee never

9   received a breathing machine, heart pills, his false teeth, or a diabetes examination, even after

10  his family made subsequent inquiries about his healthcare.  On August 16, 2008, Lee was

11  released from MCSO custody on bail.  Lee died on June 21, 2009, without being prosecuted

12  for murder.

13       Plaintiff initiated the instant action.  Many of Plaintiff's nine counts are redundant,

14  but the Amended Complaint appears to allege two types of federal claims under 42 U.S.C.

15  § 1983: (1) violation of Lee's federal constitutional protection against cruel and unusual

16  punishment based on Defendants' failure to provide adequate medical care, (2) violation of

17  Lee's federal constitutional rights under the Fifth, Sixth and Fourteenth Amendments based

18  on the officers' failure to provide Lee with *Miranda* warnings prior to his questioning and

19  the right provided to victims under the Arizona law permitting victims to address the Court

20  in proceedings related to Douglas Spencer's death.  In addition to the federal claims, the

21  Complaint raises state law claims based on wrongful death and the unconstitutionality of

22  Arizona's victims' rights laws.  On July 1, 2010, Plaintiff provided documentary evidence

23  that she is the personal representative of the estate (Doc. 48).  The Court now considers the

24  motions to dismiss.

25                                    **LEGAL STANDARD**

26       To survive a motion to dismiss for failure to state a claim pursuant to Federal Rule of

27  Civil Procedure 12(b)(6), a complaint must contain more than "labels and conclusions" or

28  a "formulaic recitation of the elements of a cause of action[;]" it must contain factual

1   allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp.*

2   *v. Twombly*, 550 U.S. 544, 555 (2007). While "a complaint need not contain detailed factual

3   allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its

4   face.'" *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting

5   *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual

6   content that allows the court to draw the reasonable inference that the defendant is liable for

7   the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*,

8   550 U.S. at 556). The plausibility standard "asks for more than a sheer possibility that a

9   defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent

10  with a defendant's liability, it stops short of the line between possibility and plausibility of

11  entitlement to relief." *Id.* (citing *Twombly*, 550 U.S. at 556–57) (internal quotations and

12  citations omitted).

13      When analyzing a complaint under Rule 12(b)(6), a court's inquiry is generally

14  "limited to the allegations in the complaint, which are accepted as true and construed in the

15  light most favorable to the plaintiff." *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th

16  Cir. 2008). And because Plaintiff is proceeding *pro se*, the Court must construe the complaint

17  liberally. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980) ("It is settled law that the allegations

18  of [a *pro se* plaintiff's] complaint, however inartfully pleaded are held to less stringent

19  standards than formal pleadings drafted by lawyers[.]") (internal quotations omitted). Legal

20  conclusions couched as factual allegations, however, are not given a presumption of

21  truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient

22  to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

23                                                     **DISCUSSION**

24      "To state claim for relief in an action brought under [section] 1983, [plaintiffs] must

25  [allege] that they were deprived of a right secured by the Constitution or laws of the United

26  States, and that the alleged deprivation was committed under color of state law." *Am. Mfrs.*

27  *Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999). "Section 1983 'is not itself a source

28  of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere

conferred.'"  *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)).  "It is well settled that section 1983 'imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law.'"  *Johnson v. Barker*, 799 F.2d 1396, 1399 (9th Cir. 1986) (quoting *Baker*, 443 U.S. at 146).

## I.    The Eleventh Amendment Bars Claims Against the State.

"Under the Eleventh Amendment, a state is immune from suit under state or federal law by private parties in federal court absent a valid abrogation of that immunity or an express waiver by the state."  *In re Mitchell*, 209 F.3d 1111, 1115–16 (9th Cir. 2000) (footnote omitted), *overruled in part on other grounds by Kimel v. Fla. Bd. of Regents*, 528 U.S. 62 (2000).  States retain their immunity against suits by private parties under the Eleventh Amendment, "regardless of the relief sought."  *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993).

Plaintiff has brought three claims against the State pursuant to 42 U.S.C. § 1983, alleging that the State violated Lee's civil rights protected by the Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution by implementing the "Victims Bill of Rights" of the Arizona Constitution.  Plaintiff asks the Court to declare the "Victims Bill of Rights" invalid.  Plaintiff concedes Arizona has not waived its right to immunity, but contends that section 1983 abrogates the State's immunity to be sued.  By its terms, section 1983 applies only to a "person" acting under color of state law. 42 U.S.C. § 1983.  The United States Supreme Court has held "that neither a State nor its officials acting in their official capacities are 'persons' under [section] 1983."  *Will v. Mich. Dep't of State Police* 491 U.S. 58, 71 (1989).  Although, "[s]ection 1983 provides a federal forum to remedy many deprivations of civil liberties, . . . it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. *Id.* at 66.  Because the State is not a person under section 1983, Plaintiff's claims pursuant to that provision must fail as a matter of law. Therefore, as section 1983 does not abrogate the State's immunity, the Court does not address the merits of Plaintiff's claims against Arizona. *See Will*, 491 U.S. at 66 ("Congress,

1   in passing [section] 1983, had no intention to disturb the States' Eleventh Amendment
2   immunity."); *Mitchell*, 209 F.3d at 1115–16 (barring actions against states absent a waiver
3   of sovereign immunity).

4

5   **II.     Plaintiff Has Stated a Claim Against Det. Mackiewicz Based Only on the Deprivation of Plaintiff's Serious Medical Needs.**

6           An individual acting under color of state law is personally liable under section 1983
7   "only upon a showing of personal participation" in the deprivation of a right secured by the
8   Constitution or laws of the United States. *Id.*  Plaintiff alleges that Det. Mackiewicz violated
9   Lee's constitutional rights by forcing him to incriminate himself and by being deliberately
10  indifferent to his serious medical needs.  Although Plaintiff does not state a claim based on
11  the alleged self-incrimination, Plaintiff adequately states a claim based on the deprivation of
12  Lee's medical needs.

13          **A.     Self-Incrimination**

14          Plaintiff alleges that Lee was compelled to be a witness against himself in violation
15  of the Fifth Amendment because Det. Mackiewicz failed to read Lee his *Miranda* rights prior
16  to questioning and because Lee was required to attend court hearings where Douglas
17  Spencer's family was allowed to speak pursuant to the "Victim's Bill of Rights" provided
18  under Arizona law.  "Statements compelled by police interrogations of course may not be
19  used against a defendant at trial, . . . but it is not until their use in a criminal case that a
20  violation of the Self-Incrimination Clause occurs[.]" *Chavez v. Martinez*, 538 U.S. 760, 767
21  (2003).  "[Plaintiff] was never made to be a 'witness' against himself in violation of the Fifth
22  Amendment's Self-Incrimination Clause because his statements were never admitted as
23  testimony against him in a criminal case.  Nor was he ever placed under oath and exposed
24  to the cruel trilemma of self-accusation, perjury or contempt." *Id.* (internal quotations
25  omitted).[1]  To the contrary, the Amended Complaint alleges that Lee died before the

26

27          [1] To the extent Plaintiff raises a claim based on the Confrontation Clause, this claim
28  fails for the same reason, as Plaintiff was never prosecuted for Douglas Spencer's murder.

government could complete its criminal prosecution.  Likewise, even if the fact that Douglas Spencer's family spoke about the murder somehow would have violated Lee's Fifth Amendment rights under normal circumstances (and Plaintiff cites no authority to suggest that it would have), no constitutional violation could have occurred here because the allegedly self-incriminating circumstances were never used against Lee in a criminal case. *Cf. Chavez*, 538 U.S. at 767.  Accordingly, Plaintiff has failed to allege that Det. Mackiewicz violated Lee's Fifth Amendment rights.

### B.   Serious Medical Needs

The remainder of Plaintiff's claims focus on the lack of medical care provided to Lee. Although Plaintiff has brought a claim for a violation of the Eighth Amendment's protection against cruel and unusual punishment and the Fifth Amendment's guarantee of due process, the Court construes the Amended Complaint as asserting a Fourteenth Amendment due process claim.  "Claims by pretrial detainees are analyzed under the Fourteenth Amendment Due Process Clause, rather than under the Eighth Amendment." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998).  "Because pretrial detainees' rights under the Fourteenth Amendment are comparable to prisoners' rights under the Eighth Amendment, however, [courts] apply the same standards." *Id.*

A violation of the right to adequate medical care requires alleging "that the officials acted with deliberate indifference in failing to respond to a serious medical need." *Id.* at 1130.  In other words, a plaintiff must show (1) a serious medical need and (2) that the defendant's response was deliberately indifferent. *Jett v. Penner,* 439 F.3d 1091, 1096 (9th Cir. 2006).  This second prong is satisfied by showing a purposeful act or failure to respond and harm caused by the indifference. *Id.*  Deliberate indifference "may appear when prison officials deny, delay, or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988) (citing *Estelle v. Gamble*, 429 U.S. at 97, 104–05 (1976)). The indifference to medical needs, however, "must be substantial; a constitutional violation is not established by negligence or 'an inadvertent failure to provide adequate medical care.'"

1   *Anderson v. County of Kern*, 45 F.3d at 1310, 1316 (quoting *Estelle*, 429 U.S. at 105–06).

2          Defendants do not appear to dispute that the Amended Complaint sufficiently alleges

3   that Lee had a serious medical need for his medicine, breathing treatment, and dentures.

4   Therefore, the only remaining issue is whether Det. Mackiewicz acted with deliberate

5   indifference.  The Amended Complaint alleges that Lee informed Det. Mackiewicz about the

6   kit containing his pills and dentures, that Lee needed and requested various types of medical

7   care, that his family inquired about the medical care multiple times, and that he ultimately

8   did not receive the medical care he requested.  Because the Court must construe the

9   Amended Complaint broadly, *see Hughes*, 449 U.S. at 9, a plausible inference is that Det.

10  Mackiewicz was aware of Lee's serious medical need for pills, dentures, and other medical

11  care, but nonetheless refused to take the actions needed to ensure that adequate medical care

12  was actually provided.  Therefore, Plaintiff adequately alleges that Det. Mackiewicz

13  purposely failed to respond to Lee's need for medical care, thus causing Lee further injury.[2]

14          **C.    Qualified Immunity**

15          The Court further rejects Defendants' assertion that qualified immunity warrants

16  dismissal of any claims against Det. Mackiewicz.  Qualified immunity will shield a defendant

17  from liability if the plaintiff cannot make a prima facie showing of a constitutional violation

18  or if, notwithstanding a constitutional violation, the constitutional right was not clearly

19  established at the time of the violation. *See Orin v. Barclay*, 272 F.3d 1207, 1214 (9th Cir.

20  2001) (citing *Saucier v. Katz*, 533 U.S. 194, 201–05 (2001)).  "If a public official could

21  reasonably have believed that his [or her] actions were legal in light of clearly established

22

23  _____

24          [2] It is unclear whether Plaintiff intends to raise a claim based on non-medical conditions of confinement, as the Amended Complaint pleads facts relating to the number

25  of people sharing Lee's cell.  Such an argument would fail, however.  Confinement conditions are unconstitutional only where there is an "objectively, sufficiently serious"

26  deprivation and the prison official acts with deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotations omitted).  Lee apparently shared his cell with

27  two other individuals, and Plaintiff offers no legal or factual argument why this would

28  constitute an "objectively, sufficiently serious" condition.

law and the information he [or she] possessed at the time, then his [or her] conduct falls within the protective sanctuary of qualified immunity." *Orin*, 272 F.3d at 1214.  As Plaintiff has adequately pled a constitutional violation, qualified immunity would apply only if the constitutional right was not clearly established at the time.  As described above, however, it is settled law that public officials cannot be deliberately indifferent to a prisoner's serious medical needs by purposely denying treatment. *See Estelle*, 429 U.S. at 97, 104–05, *Jett*, 439 F.3d at 1096, *Hutchinson*, 838 F.2d at 394.  The Amended Complaint, read fairly to the *pro se* Plaintiff, alleges that Det. Mackiewicz was aware of medical treatment that Lee required, yet prevented him from receiving it.  If true, these facts could constitute a denial of a clearly-established constitutional right.  Although qualified immunity ultimately may bar claims against Det. Mackiewicz depending on the facts available at the summary judgment stage, the Amended Complaint has alleged facts sufficient to avoid dismissal.

## III.      Plaintiff Has Stated a Claim Against the County and Sheriff Arpaio.

"[A] municipality can be found liable under [section] 1983 only where the municipality itself causes the constitutional violation at issue.  Respondeat Superior or vicarious liability will not attach under [section] 1983." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 694–95 (1978) (emphasis deleted)).  Liability may attach against a municipality in two ways.  First, the municipality itself may violate an individual's rights through a policy, ordinance, regulation, or other formal decision. *Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002).  Second, in certain circumstances, a municipality may be liable based on its omissions if its employee commits a constitutional violation, even if the municipality did not formally direct the employee to do so. *Id.* at 1185.  Meanwhile, "[a] supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

Plaintiff alleges that the County and Sheriff Arpaio failed to train officers in administering medical care, resulting in Det. Mackiewicz and other MCSO employees

1   denying Lee certain medical care.  "[T]he inadequacy of police training may serve as the
2   basis for [section] 1983 liability only where the failure to train amounts to deliberate
3   indifference to the rights of persons with whom the police come into contact." *City of*
4   *Canton*, 489 U.S. at 388.  The Amended Complaint alleges that Sheriff Arpaio, acting as the
5   final decision maker for Maricopa County, had a policy and practice of failing to teach
6   officers to recognize when the sick and elderly required certain medical care and how to
7   administer it properly.  As training regarding the health needs of prisoners is inherent in
8   creating a well-functioning correctional facility, the Amended Complaint fairly alleges that
9   Sheriff Arpaio and the County were deliberately indifferent to Lee's medical needs.  A
10  plausible inference further arises that some level of training beyond what was given was
11  required given Plaintiff's allegations that repeated requests for medical care were followed
12  only by repeated failures to provide medical care.  The policy of a lack of training may have
13  manifested itself in Det. Mackiewicz's alleged failure to ensure that Lee received the medical
14  care he needed and in other MCSO employees ignoring repeated inquiries from the Lees
15  regarding medical care.  The County Defendants repeatedly assert that Plaintiff must plead
16  more facts surrounding the training policy, but they do not suggest what additional level of
17  detail this *pro se* litigant must allege, at this early stage of litigation, to put the County
18  Defendants fairly on notice of the claims against them.  Accordingly, the Court denies the
19  County Defendants' motion regarding Sheriff Arpaio and the County.

20  **IV.    Plaintiff May Not Seek Pain and Suffering Damages**

21          Although Section 1983 does not contain a survivorship provision, Section 1988 of the
22  Civil Rights Act provides that with regard to any matter on which the Act is silent, the
23  applicable law is the law of the state where the district court is located. *See* 42 U.S.C. § 1988.
24  Arizona law disallows pain and suffering damages to survive the death of the person entitled
25  to those damages. *See* Ariz. Rev. Stat. Ann. § 14-3110.  Therefore, with respect to Plaintiff's
26  federal and state claims, Plaintiff has not pled a claim to receive pain and suffering damages,
27  but may seek all other damages allowed by law.

28          **IT IS THEREFORE ORDERED** that the Motion to Dismiss filed by Arizona (Doc.

1   34) is **GRANTED** with prejudice.

2       **IT IS FURTHER ORDERED** that the Motion to Dismiss filed by the County

3   Defendants (Doc. 25) is **GRANTED-IN-PART** and **DENIED-IN-PART**.  The Motion is

4   granted only to the extent that (1) Plaintiff alleges a violation of Lee's right against self-

5   incrimination, and to the extent that (2) Plaintiff seeks damages based on Lee's pain and

6   suffering.  The Motion is denied in all other respects.

7       DATED this 6th day of October, 2010.

8

9   _____

         G. Murray Snow
10       United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28